528 So.2d 1105 (1988)
Morris Lee McMANUS, Plaintiff-Appellee,
v.
Willey Lenora McMANUS, Defendant-Appellant.
No. 87-613.
Court of Appeal of Louisiana, Third Circuit.
July 21, 1988.
Rehearing Denied August 16, 1988.
David A. Sheffield, Alexandria, for plaintiff-appellee.
Samuel P. Love, Jr., Shreveport, for defendant-appellant.
Before DOMENGEAUX, GUIDRY and LABORDE, JJ.
LABORDE, Judge.
On December 2, 1986, appellee Morris McManus filed a rule for termination of child support. Appellant, Willey Myers McManus then filed a rule to increase child support and for contempt of court. The rules were consolidated and a trial was held on the matters in Grant Parish. The trial court held in favor of Morris McManus and allowed child support payments of $250 per month to be suspended until his trucking business sufficiently improves to allow him to resume those payments. Although the trial court held against Willey McManus on her claim to increase child support payments, it did hold in her favor as to the contempt of court claim against Morris *1106 McManus for failing to pay past due child support. That judgment awarded Willey McManus $1,375 for past due unpaid child support, and also awarded her attorney's fees and court costs. To comply with that order Morris McManus was ordered to pay installments of $75 per month.
Willey McManus now appeals the trial judge's holding regarding future child support payments. She claims that the $250 per month payments should not have been suspended, but instead should have been increased to $350 per month. Neither party appeals the trial judge's holding as to Morris McManus' contempt of court.

FACTS
Willey and Morris were divorced by Judgment of Court rendered November 7, 1984. Morris was given sole custody of their minor child, Kendell, who is now 17. Willey was not ordered to pay child support for Kendell. Willey was given custody of Jeremy, a minor child who was adopted by Willey and Morris during their marriage. Morris was ordered to pay child support in the sum of $250 per month for Jeremy which was suspended by the trial judge on March 23, 1987.
The testimony of Willey and Morris is conflicting. Each claims to be impecunious and each claims that the other has ample means to support Jeremy. From the record it is apparent that both parties have recently been employed, but each would rather spend their earnings on automotive needs than upon the care of Jeremy.
Although unemployed at the time of the divorce, Willey is now employed as a truck driver. She claims to make about $600 per month (Morris claims that she actually makes closer to $1,000 per month). In the community property settlement Willey received $32,000 cash, a 1981 Lincoln Mark IV, a house trailer, and furniture. Willey claims to have spent most of the money she received from the settlement to pay back personal loans. She refused to document these loans and claimed that they were private and confidential. She claims that she was "borrowing from Peter to pay Paul." Willey claims to spend about $2,700 per month on expenses. She says that she owes several thousands dollars on her credit cards and pays her sister $350 per month to take care of Jeremy when she is working. Although Willey claims to be having serious financial problems, she recently purchased a $14,000 Mustang for her other son, Kendell. She pays a $250 monthly note on that car along with $171 a month insurance for Kendell. Morris claims that he was about to purchase a used car for Kendell, but that Willey insisted on buying the new car for him. Morris also claims that Willey's estimated $2,700 in monthly expenses is greatly exaggerated. He claims that many of her alleged monthly expenses were, in reality one-time expenditures, such as a $450 car repair bill. He claims that she failed to produce the proper records to document her alleged expenses and the records for the 5 months that she did produce indicated monthly expenses of $700-$1,300.
Morris is in the trucking business. He was, at the time of the divorce, making about $5,200 per month. He claims that problems with the economy have caused him financial problems. He stated at trial that he was last working in December, 1986. He had no work in January-March of 1987, but felt that he would be back working in April, 1987. Morris owned a grocery store which was destroyed by fire. He used the insurance proceeds to pay start-up costs for his trucking business. Morris also sold a jewelry business that he owned for $22,000 and received $12,000 in the community property settlement. He also claims to have used all of these funds for his trucking business. Morris claims to spend $2,382 per month on living expenses and $3,168 per month on expenses for his truck. Kendell now lives with his grandmother and Morris allegedly pays her $200 per month and forwards $30 per month for Kendell's personal expenses. Morris has remarried and alleges that he and his wife live on about $200 per month. They also live with his wife's daughter, but support for her is paid by her natural father.
The trial court considered these facts and found in favor of Morris. It found that *1107 Morris was having problems with his business and suspended his payment of child support until the business improved. The fact that Willey now has an income also apparently figured into the trial court's determination.

CHILD SUPPORT
Parents share the responsibility of supporting, maintaining, and educating their children. LSA-C.C. art. 227. To determine the amount of a child support award it is proper to consider the totality of relevant circumstances. LeBlanc v. LeBlanc, 452 So.2d 402, 403 (La.App. 3d Cir. 1984). The amount of child support is determined according to the needs of the child as well as the means available to the parties obligated to pay it. Id. An initial award of child support should not be altered unless a change in circumstances is shown. St. Romain v. St. Romain, 473 So.2d 390, 391 (La.App. 3d Cir.1985).
In cases where both parents are employed, Louisiana courts have taken into account their comparative salaries and responsibilities. The courts have stated that the day-to-day maintenance of the child provided by the custodial parent, although not normally measurable, is a substantial contribution to the child support obligation. Owens v. Owens, 489 So.2d 321, 324 (La. App. 4th Cir.1986); Dufrene v. Dufrene, 430 So.2d 759, 762 (La.App. 5th Cir.1983).
We have recognized that a parent's obligation to support his child is of primary importance and is a matter of public policy. Boudreaux v. Boudreaux, 460 So.2d 703, 705 (La.App. 3d Cir.1984). A parent's practical inability to pay does not allow that parent to avoid his share of the obligation when that inability arises from his own neglect or failure. Even when a parent is in financial straits, he is obligated to support the legitimate needs of his child during minority. Although a court may sympathize with a parent's problems, it may not act as a financial counselor to relieve problems brought on by his own poor fiscal management. Id.
Although a parent may be unemployed, he is not relieved of his duty to support and maintain his children. He is only excused from this obligation if it appears that he is not only unemployed, but unemployable. Chaudoir v. Chaudoir, 446 So.2d 951, 953 (La.App. 3d Cir.1984).
In the case at hand, Morris asserts that he should be relieved of his duty to support Jeremy because he is having problems with his trucking business and because Willey is now employed. The trial court agreed and suspended child support payments. We do not agree. When the original divorce decree was issued and up until December of 1986, Morris was making about $5,200 per month. We note that he filed his rule for termination on December 2, 1986. He claims that he was temporarily laid off from January-March of 1987, but felt that he would be back to work in April, 1987. He asserts that this fact along with the fact that he is spending so much money on his truck should be considered as a change of circumstances sufficient to terminate his duty to support Jeremy. He also points out that Willey now has an income.
After reviewing all of the above facts along with the relevant jurisprudence, we find that Morris' financial situation does not warrant termination or even a suspension of his duty of child support. When he is working, his income is five times more than that of Willey. Although he was apparently not working at the time of the trial, he felt that he would be back at work shortly. Although Willey does have an income and apparently has not spent her money wisely, we do not feel that she is in the position to solely provide for Jeremy, nor is it her obligation to solely do so.
We thus hold that the trial court's suspension of Morris McManus' child support obligation was erroneous and reverse that decision. We reinstate the obligation of Morris McManus to pay child support in the amount of $250 per month until Jeremy reaches the age of majority or until changed by proper court order. We also order that Morris McManus pay the $250 per month child support payments that were suspended from the date of the trial *1108 court's judgment to the present. Costs of this appeal are taxed to appellee, Morris McManus.
REVERSED AND RENDERED.